**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| CHRISTINE DONALDSON, | ) | Case No.: 1:14-cv-00257-AWI- JLT |
| Plaintiffs, | )<br>)<br>) | ORDER DENYING PLAINTIFF'S MOTION TO MODIFY THE SCHEDULING ORDER FOR |
| v. | )<br>) | LEAVE TO FILE A SECOND AMENDED COMPLAINT |
| KERN COUNTY, OFFICER BRENDA GRAVES, OFFICER PHILLIP ROMERO, OFFICER MISTY ISAAC, OFFICER FRANCES PERKINS, and DOES 1-10, | )<br>)<br>)<br>) | (Doc. 40) |
| Defendants. | )<br>) | |

Plaintiff seeks leave to amend the Scheduling Order to file a Second Amended Complaint in the action to identify two of the "Doe" defendants and add factual allegations related to these individuals. (Doc. 40.)  Defendants oppose modification of the Court's Order.  (Doc. 44.)  Because the Court finds Plaintiff fails to demonstrate diligence in discovery, the Court finds Plaintiff has not shown good cause for amending the Scheduling Order and the motion to amend is **DENIED**.

I.      **Background**

Plaintiff alleges she was incarcerated at Lerdo Female Minimum Facility on February 29, 2012, where she "was subjected to a strip search after returning from a class."  (Doc. 21 at 4, ¶ 14.)  She alleges Officer Graves performed the search while "a male guard, Officer Romero, surreptitiously observed the search."  (*Id.*)  According to Plaintiff, "Officer Graves ignored [Plaintiff's] complaints that Officer Romero was improperly observing the strip searches."  (*Id.*)  Plaintiff filed grievances against

Romero and Graves for their conduct during the search, as well as "a grievance against Officer Graves for improperly manipulating [Plaintiff's] housing assignment." (*Id.* at 4-5, ¶ 14.) Plaintiff alleges Officer Graves decided to retaliate against her for filing the grievances by verbally harassing Plaintiff and subjecting Plaintiff "to disparaging treatment." (*Id.* at 5, ¶ 5.)

Plaintiff asserts she "suffered a severe adverse reaction after inserting a contact lens into her right eye" in early March 2012. (Doc. 21 at 5, ¶ 16.) Plaintiff alleges she "repeatedly sought out medical attention" from the guards, including defendants Graves, Isaac and Perkins. (*Id.*) According to Plaintiff, "in retaliation for her complaint against Officers Graves and Romero, defendants Graves, Isaac and Perkins refused to provide necessary medical care." (*Id.*, ¶ 17.) Plaintiff alleges the County is liable for the defendants' actions because it failed to "provide adequate training and supervision to Sheriff's deputies with respect to constitutional limits on use of strip searches and the provision of medical care," and failed "practice and enforce policies against retaliation against inmates for reporting misconduct and/or filing grievances about jail conditions." (*Id.* at 6, ¶ 19.)

Based upon the foregoing facts, Plaintiff raises three causes of action[1]: (1) illegal strip search in violation of the First, Fourth, Eighth and Fourteenth Amendments to the Constitution, pursuant to 42 U.S.C. § 1983 (against all defendants, except Isaac and Perkins); (2) retaliation for exercise of First Amendment Rights by all defendants, except Romero; and (3) denial of medical care by all defendants, except Romero. (*See* Doc. 21 at 7-10.)

The Court held a scheduling conference with the parties on August 29, 2014. (Doc. 23.) The Court ordered the parties to make initial disclosures no later than September 11, 2014 and set the other case deadlines. (*Id.* at 1.) In particular, "[a]ny requested pleading amendments [were] ordered to be filed, either through a stipulation or motion to amend, no later than November 24, 2014." (*Id.* at 9, emphasis omitted.) On February 19, 2015, the Court granted the parties' stipulation to amend the case scheduled to extend the deadlines related to nonexpert and expert discovery, motions, the pretrial conference date and the trial date. (Doc. 35.) Notably, Plaintiff did not request the Court extend the

---

[1] Plaintiff fails to allege in her complaint whether she was a convicted inmate at the time of these events or whether she was a pretrial detainee. Absent this factual allegation, Plaintiff has not stated a claim for a violation of the Eighth Amendment.

pleading amendment deadline nor did the stipulation describe any concern related to the deadline which, by this point had passed nearly three months before.  (Doc. 31.)  In granting the request, the Court admonished, "**No further amendments to the case schedule will be entertained absent a showing of exceptional good cause which does not include Plaintiff becoming re-incarcerated.**"  (Doc. 35 at 2.)

## II.    Legal Standards

Districts courts must enter scheduling orders in actions to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions."  Fed. R. Civ. P. 16(b)(3).  In addition, scheduling orders may "modify the timing of disclosures" and "modify the extent of discovery."  *Id.*  Once entered by the court, a scheduling order "controls the course of the action unless the court modifies it."  Fed. R. Civ. P. 16(d).  Scheduling orders are intended to alleviate case management problems.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992).  As such, a scheduling order is "the heart of case management."  *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3rd Cir. 1986).

Further, scheduling orders are "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."  *Johnson*, 975 F.2d at 610 (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Maine 1985)).  Good cause must be shown for modification of the scheduling order.  Fed. R. Civ. P. 16(b)(4).  The Ninth Circuit explained:

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although existence of a degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for modification. If that party was not diligent, the inquiry should end.

*Johnson*, 975 F.2d at 609 (internal quotation marks and citations omitted).  Therefore, parties must "diligently attempt to adhere to the schedule throughout the course of the litigation."  *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999).  The party requesting modification of a scheduling order has the burden to demonstrate:

> (1) that she was diligent in assisting the Court in creating a workable Rule 16 order, (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding

her efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference, and (3) that she was diligent in seeking amendment of the Rule 16 order, once it become apparent that she could not comply with the order.

*Id.* at 608 (internal citations omitted).

### III.   Discussion and Analysis

The Scheduling Order set forth a pleading amendment deadline of November 24, 2014.  (Doc. 23 at 1, 2.)  The current motion was not filed until April 22, 2015.  (Doc. 40.)  Thus, Plaintiff must demonstrate good cause under Rule 16 for filing an amended pleading out-of-time.  *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (explaining the question of whether the liberal amendment standard of Rule 15(a) or the good cause standard of Rule 16(b) apples to a motion for leave to amend a complaint depends on whether a deadline set in a Rule 16(b) scheduling order has expired).

### A.   Plaintiff's Diligence

Plaintiff asserts that "light of the new information disclosed in a recent deposition there is good cause to modify the scheduling order and to grant leave to amend the pleadings."  (Doc. 40 at 9.)  She contends that at the deposition of Kathe Lundgren on March 25, 2015, she learned "for the first time that grounds for additional claims – all arising from the very same nucleus of operative fact – existed in this matter."  (*Id.*)  Plaintiff asserts that Lundgren "disclosed the existence of a previously unknown unconstitutional policy at the Lerdo facility that resulted in the denial of adequate medical care to Ms. Donaldson."  (*Id.* at 11.)  Further, Plaintiff maintains that Lundgren revealed that Doe Nurse 1 was an RN and she violated the nursing protocols that were produced by Defendants on March 24, 2015, which require an RN to "immediately refer an inmate to a physician for assessment of the injury" when a patient complains "of a foreign body in the eye when no foreign body is visible." (*Id.* at 12.)  Finally, Plaintiff contends Lundgren revealed at her deposition that she decided not to send Plaintiff to an outside hospital on March 10, 2012 because she knew it was the ophthalmologist's day off. (*Id*. at 9) The Court finds that many of these facts were known to Plaintiff when the complaint and first amended complaints were filed, or were not needed to file the second amended complaint.

For example, Plaintiff knew she was examined by nurses at Lerdo, and the first nurse responded

to Plaintiff's complaints by telling her to wash her eyes out with soap and water. Plaintiff knew that until March 11, 2012, after none of her visits with the nurse did she see a doctor.  She knew the condition of her eyes each time she saw a nurse and did not receive medical treatment.  Thus, the Court is unclear why the new information set forth above, was needed before the amendment could be sought.

First, Plaintiff fails to explain how review of the nursing protocols was necessary for her to determine whether the nurses' actions were proper or in violation of the constitution.  Though she describes these protocols as "set[ting]  the floor for constitutionally adequate medical care at Lerdo . . ." she fails to explain why she thinks this.[2]  In fact, this is contrary to legal authority which holds that an officer's failure to comply with regulations or policies, without more, does not state a claim under § 1983. *Sandin v. Conner*, 515 U.S. 472, 482 (1995) (finding no constitutionally protected liberty interest in prison regulations phrased in mandatory terms); *Bostic v. Carlson*, 884 F.2d 1267, 1270 (9th Cir.1989) (a prison's failure to follow its guidelines regarding disciplinary hearings does not equate to a constitutional violation of due process); *Ybarra v. Bastian*, 647 F.2d 891, 892 (9th Cir.1981) (a mere violation of state law does not state a claim for a constitutional violation that is cognizable under § 1983).  Instead, to state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (U.S. 1988). Thus, Plaintiff has not shown that the nurses' failure to comply with County protocols have any bearing on whether Plaintiff has suffered a constitutional deprivation.

Even still, when she realized that Defendants had not provided them in discovery responses on November 11, 2014, she then waited nearly three months to issue a subpoena to obtain the protocols knowing that the response would not be made until late March.  (Doc. 43 at 3.)  Plaintiff does not explain why she chose instead to secure an expert who could opine about the protocols rather than issuing the probable adverse consequences probable adverse consequences a prisoner be treated. Toward this end, Plaintiff offers no allegations that the constitutional duty owed to Plaintiff varied

---

[2] Moreover, if a local policy, in fact, sets a constitutional minimum for the provision of medical care, then this logic would dictate that when County reduced Plaintiff's Vicodin from four times a day to twice per day, no violation could be found; Clearly, not.

1   depending upon they type of nursing credential each person held.

2   　　　On the other hand, Plaintiff asserts that she recalls that on March 10, 2012, Lundgren *had*

3   ordered her sent to the hospital but that custodial staff failed to follow that direction.  (Doc. 40-3 at 2.)

4   However, Lundgren testified that she *did not* refer Plaintiff to a doctor but planned to do so on the

5   following Monday.  (Doc. 43-1 at 76.)  The fact that Lundgren did not refer Plaintiff to an

6   ophthalmologist is made clear in the medical records which, no later than November 11, 2014, Plaintiff

7   had in her possession.

8   　　　The other fact Plaintiff learned at Lundgren's deposition was that Plaintiff's Vicodin

9   prescription was reduced from four times per day to twice per day.  The allegation indicates that this

10  was done in compliance with County's policy that permitted medication distribution only twice per

11  day. However, as explained in more detail below, this fact is added only to bolster the *Monell* claim.[3]

12  　　　Importantly, from the beginning of this case, Plaintiff has taken the position that she was denied

13  medical care.  Thus, from the outset, Plaintiff knew Lundgren was, at a minimum, a witness to these

14  acts and identified her as such on her Rule 26 disclosure.  Plaintiff offers little explanation why she

15  waited until after the pleading amendment deadline had passed to take Lundgren's deposition.  Instead,

16  she merely notes that "several months" of the discovery period still remain.  (*See* Doc. 45 at 3.) This

17  fails to demonstrate diligence.  Moreover, the explanation that Plaintiff needed to obtain the nursing

18  protocols, as discussed above, just not justify Plaintiff's delay in conducting discovery.  Likewise,

19  Plaintiff's delay in obtaining her medical records is inexplicable given they were within Plaintiff's

20  control. Thus, why Plaintiff chose to wait more than a year after the matter was filed to confirm her

21  assumptions about the lack of medical treatment provided, is uncertain.

22  　　　In addition, though Plaintiff asserts that she could not amend her complaint before now because

23  she has been delayed in identifying the true names of the Doe defendants, she fails to explain why this

24  was needed.  If it was needed, she fails to explain why the amendment related to "Doe Nurse 1" should

25  be permitted; either it was improper in November to name a "doe" and is still improper now or the

26

27  ───────────────

28  　　　[3] At the hearing, Plaintiff's counsel seemed to imply that this fact demonstrates Lundgren's liability for denial of
medical care.  However, the language of the proposed amendment, which fails to identify Lundgren, does not give fair
notice that it this act is asserted against her.

6

1   converse is true. Even still, Plaintiff fails to explain why, when she realized on November 11, 2014 that

2   Defendants' discovery responses did not reveal the names of the nurses at issue, she waited three

3   months (Doc. 43 at 3-4)—two months after the amendment deadline—to serve a subpoena to discover

4   this information.

5          Finally, Plaintiff wholly fails to address the fact that the parties previously requested the Court

6   amend the scheduling order.  (Doc. 34.)  At that time, she made no mention of any difficulty with the

7   fact that the pleading amendment deadline had passed, that she was working toward developing facts

8   that she believed would necessitate the filing of a second amended complaint or that she had been, in

9   any way, thwarted from obtaining the discovery she needed.  (*Id*. at 2-7.)  She ignores also, the Court's

10  strong admonishment that the scheduling order would not again be modified without a sufficient

11  showing.[4]

12         In any event, because Plaintiff has failed to demonstrate that she acted diligently in seeking the

13  amendment she has failed to demonstrate good cause exists to modify the scheduling order related to

14  the pleading amendment deadline.[5]

15  **B.      Leave to amend the Complaint**

16         Even assuming Plaintiff acted diligently in the course of discovery, she has failed to show

17  amendment of the complaint is proper under Rule 15.  Granting or denying leave to amend a

18  complaint under Rule 15 is in the discretion of the Court, *Swanson v. United States Forest Service*, 87

19  F.3d 339, 343 (9th Cir. 1996), though leave should be "freely given when justice so requires."  Fed. R.

20  Civ. P. 15(a)(2).  There is no abuse of discretion "in denying a motion to amend where the movant

21  presents no new facts but only new theories and provides no satisfactory explanation for his failure to

22  fully develop his contentions originally."  *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995); *see*

23  *also Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990).

24         Leave to amend should not be granted where "amendment would cause prejudice to the

25

26  _____

27         [4] This implies that Plaintiff has planned the current state of events wherein she obtained an extension of the
    discovery period for the purpose of being able to argue that allowing a late pleading amendment would impose no
    prejudice.

28         [5] If Plaintiff truly feels she was improperly thwarted by Defendants in her discovery efforts, the Court is at a loss
    why she chose not to force Defendants' compliance with discovery via a motion to compel.

                                                    7

1   opposing party, is sought in bad faith, is futile, or creates undue delay." *Madeja v. Olympic Packers*,

2   310 F.3d 628, 636 (9th Cir. 2002) (citing *Yakima Indian Nation v. Wash. Dep't of Revenue*, 176 F.3d

3   1241, 1246 (9th Cir. 1999)).  Consequently, under Rule 15(a), there are several factors a court may

4   consider in deciding whether to grant leave to amend a complaint:  (1) whether the plaintiff has

5   previously amended the compliant, (2) undue delay, (3) bad faith, (4) futility of amendment, and (5)

6   prejudice to the opposing party.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); L*oehr v. Ventura County*

7   *Cmty. Coll. Dist.*, 743 F.2d 1310, 1319 (9th Cir. 1984).  These factors are not of equal weight;

8   prejudice to the opposing party has long been held to be the most crucial factor in determining whether

9   to grant leave to amend.  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)

10  ("As this circuit and others have held, it is the consideration of prejudice to the opposing party that

11  carries the greatest weight"); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990); *Howey*

12  *v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973).

13          1.      Prior amendments

14          The Court's discretion to deny an amendment is "particularly broad" where a plaintiff has

15  previously amended her complaint.  *Allen*, 911 F.2d at 373; *Fidelity Fin. Corp. v. Fed. Home Loan*

16  *Bank*, 79 F.3d 1432, 1438 (9th Cir. 1986).  Here, Plaintiff has previously amended the complaint.

17  (Doc. 21.) In that amendment, she made non-substantive changes, by correcting Defendants' names,

18  and substantive changes by adding a cause of action and by dismissing one defendant and adding

19  another.  Thus, this factor weighs against amendment.

20          2.      Undue delay

21          When evaluating undue delay, the Court considers "whether the moving party knew or should

22  have known the facts and theories raised by the amendment in the original pleading." *Jackson*, 902

23  F.2d at 1388; *see also Eminence Capital*, 316 F.3d at 1052.  The Court also should examine whether

24  "permitting an amendment would . . . produce an undue delay in the litigation."  *Id.* at 1387.  By itself,

25  undue delay may be insufficient to prevent the Court from granting leave to amend pleadings.  *Howey*,

26  482 F.2d at 1191; *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1986).  However, in

27  combination with other factors, delay may be sufficient to deny amendment.  *Hurn v. Ret. Fund Trust*

28  *of Plumbing*, 648 F.2d 1252, 1254 (9th Cir. 1981).

Importantly, Plaintiff admits that she knew Doe Nurse 1 and Lundgren treated her.  She knew her medical condition at the time of these contacts and she knew her medical condition was apparent to the nurses.  She knew she expressed the amount of pain she was in as a result of the medical condition. Finally, she knew that after seeing the nurses, she did not see a doctor.  Whether they failed to refer her because of a concern about interrupting a doctor's day off or because they simply didn't want to make the referral makes no difference to whether she could state a claim for an unconstitutional denial of medical care against either nurse.  As noted above, the obligations set forth in the nursing protocols, likewise, makes no difference to her ability to state a claim against the nurses.

In addition, Plaintiff fails to explain how discovery of the fact that Lundgren's decision to deny Plaintiff the pain medication prescribed by the doctor was pursuant to a County policy, modifies in any way, the *Monell* claim.  Rather, as Plaintiff's counsel admitted at the hearing, this is evidence that may be used—regardless of whether the pleading amendment is permitted here—to prove that the constitutional deprivation, if there was one, was caused by County's policy.  Thus, because Plaintiff delayed unduly in seeking to amend the pleadings, this factor weighs against granting leave to amend.

### 3.    Bad faith

There is no evidence that Plaintiff has acted in bad faith in seeking to file a second amended complaint.  Thus, this factor does not weigh against an amendment.

### 4.    Futility of amendment

"Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin*, 59 F.3d at 845; *see also Miller v. Rykoff-Sexton*, 845 F.2d 209, 214 (9th Cir. 1988).  To determine whether the proposed amendment is futile, the Court should evaluate whether the facts alleged would be sufficient to withstand a motion to dismiss pursuant to Rule 12(b)(6).  *See Townsend v. University of Alaska*, 543 F.3d 478, 486 n.6 (9th Cir. 2008) (noting that the "basis for futility is more accurately characterized as a failure to state a claim for relief"); see also *SmithKline Beecham Corp. v. Geneva Pharms., Inc.*, 287 F. Supp. 2d 576, 581 (E.D. Pa. 2002) ("Futility is analyzed under the same standard of legal sufficiency as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  In other words, leave to amend should not be denied based on futility unless the proposed amended complaint would 'fail to state a claim upon which relief can be granted.'").  Thus, where the amendments fail to

state a claim, the Court does not err in denying leave.  Indeed, in *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) the Court held that, "Leave to amend need not be given if a complaint, as amended, is subject to dismissal."

a.      General pleading standards

A complaint must give fair notice and state the elements of the plaintiff's claim in a plain and succinct manner and identify the grounds upon which the complaint stands.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *Jones v. Cmty Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984).  In *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009), the Supreme Court noted,

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

(Internal quotation marks and citations omitted).  Conclusory and vague allegations do not support a cause of action.  *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).  The Court clarified further,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation].

*Iqbal*, 566 U.S. at 678 (citations omitted).  When factual allegations in a complaint are well-pled, a court should assume their truth and determine whether the facts would make the plaintiff entitled to relief.  *Id.*  However, legal conclusions are not entitled to the same assumption of truth.  *Id.*

b.      Deliberate indifference to a serious medical condition[6]

To state a claim against Doe Nurse 1 and Lundgren for denial of medical care, Plaintiff must demonstrate first that she suffered from a serious medical need.  A serious medical need exists "if the

---

[6] As noted above, the Court concludes that the additional information that Plaintiff's Vicodin prescription was changed based upon a County policy, has no bearing on the *Monell* claim already pleaded in the first amended complaint. In that complaint, Plaintiff did not name a particular policy related to the denial of medical care but alleged that County maintained an unconstitutional policy of doing so. (Doc. 21 at 6, 7)  Though the Court agrees that the added factual allegation would likely have been required had a challenge to the pleading been lodged, no such challenge was lodged.

failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (quoting *Estelle,* 429 U.S. at 104). Indications of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990).

Second, Plaintiff must allege facts that establish that Defendants responded to the serious medical need with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In clarifying the culpability required for deliberate indifference," the Supreme Court held,

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exits, and he must also draw that inference.

*Farmer*, 511 U.S. at 837. Therefore, a defendant must be "subjectively aware that serious harm is likely to result from a failure to provide medical care." *Gibson*, 290 F.3d at 1193 (emphasis omitted). When a defendant should have been aware of the risk of substantial harm but, indeed, was not, "then the person has not violated the Eighth Amendment, no matter how severe the risk." *Id.* at 1188.

Where deliberate indifference relates to medical care, "[t]he requirement of deliberate indifference is less stringent . . . than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns." *Holliday v. Naku*, 2009 U.S. Dist. LEXIS 55757, at *12 (E.D. Cal. June 26, 2009) (citing *McGuckin*, 974 F.2d at 1060). Claims of negligence or medical malpractice are insufficient to claim deliberate indifference. *Id.* at 394; *Toguchi*, 391 F.3d at 1057. Generally, deliberate indifference to serious medical needs may be manifested in two ways: "when prison officials deny, delay, or intentionally interfere with medical treatment, or . . . by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 393-94 (9th Cir. 1988).

///

11

c.      Factual allegations

In the proposed second amended complaint, Plaintiff alleges:

21.     MS. DONALDSON was finally seen by DOE NURSE 1 on or about March 7, 2012.  MS. DONALDSON informed the DOE NURSE 1 that she thought there was something in her eye. In fact there was no foreign body in her eye, and the sensation of a foreign body was an indication that Ms. Donaldson required immediate medical attention. In deliberate indifference to MS. DONALDSON's serious medical needs and in reckless disregard of the probable adverse consequences to MS. DONALDSON, DOE NURSE 1 refused to take MS. DONALDSON to see a physician and/or nurse practitioner, and instead instructed MS. DONALDSON to wash her eyes with soap and water. Ms. Donaldson followed the instruction, causing her unnecessary pain and anguish in her already damaged eyes.

22.     On or about March 10, 2012, MS. DONALDSON's eyes were seriously infected, with visible swelling and drainage. In addition, MS. DONALDSON was in agonizing pain. MS. DONALDSON was seen by a nurse who contacted LUNDGREN. LUNDGREN knew of Plaintiff's complaint on March 7, 2012 that she felt there was something in her eye when nothing was visible in her eye. Despite such knowledge, LUNDGREN refused to send MS. DONALDSON to see a physician at Kern Medical Center because she did not want to bother the ophthalmologist who she believed did not regularly work on weekends. This refusal was intentional, in deliberate indifference to MS. DONALDSON's serious medical needs and in reckless disregard of the probable adverse consequences to MS. DONALDSON[.]

23.     On or about Sunday March 11, 2012, MS. DONALDSON was seen by an ophthalmologist at Kern Medical Center who was called in because of the severity of MS. DONALDSON's condition. By then, MS. DONALDSON had experienced permanent vision loss and other physical injuries.

24.     MS. DONALDSON was prescribed, among other medication, Vicodin, four times a day. Pursuant to Kern County's policy, Kern County refused to follow MS. DONALDSON's physician's medical advice and only permitted MS. DONALDSON to take Vicodin twice daily. This refusal was intentional, in deliberate indifference to MS. DONALDSON's serious medical needs, and in reckless disregard of the probable adverse consequences to MS. DONALDSON.

(Doc. 41-1 at 6-7.)

Notably, Plaintiff *concludes* the actions of Doe Nurse 1 were taken because of the nurse's deliberate indifference to "serious medical needs and in reckless disregard of the probable adverse consequences."  (*Id.*)  However, Plaintiff fails to allege *facts* to support this conclusion.  For example, there is no showing that Plaintiff's condition on March 7, 2012, was serious[7] or that Doe Nurse 1 was subjectively aware that it was.  To the contrary, the medical evidence submitted by Plaintiff indicates

---

[7] On its face, there mere fact that Plaintiff felt there was something in her eye despite that nothing could be seen, is a circumstance that nearly everyone has experienced.  This fact alone does not demonstrate she was suffering from a condition doctors would feel worthy of treatment.

12

1    that Doe Nurse 1 noted Plaintiff had redness of her eye "due to irritation" but found "no

2    [signs/symptoms] of infection" such as "drainage []or swelling." (Doc. 43-1 at 26.) Likewise, there is

3    no allegation that Plaintiff reported to Doe Nurse 1 that she was in pain.

4        Similarly, though Plaintiff alleges that on March 10, 2012, her "eyes were seriously infected,

5    with visible swelling and drainage" and that she "was seen by a nurse who contacted Lundgren" she

6    does not allege that Lundgren observed her condition or that the nurse informed Lundgren of

7    Plaintiff's condition on that day. (Doc. 41-1 at 6, ¶ 22.) At most, Plaintiff alleges Lundgren knew

8    Plaintiff had complained about her eyes on March 7, 2012. (*Id.*) Though Plaintiff complains

9    Lundgren failed to refer her to a doctor at that time, she does not allege facts that Lundgren was aware

10   that Plaintiff was suffering from a serious medical condition at the time. (*Id.*) Thus, Plaintiff's

11   allegation that Lundgren failed to refer her to KMC because Lundgren did not want to "bother" the

12   doctor on his day off, by itself does not state a claim.

13       Finally, though Plaintiff alleges the County reduced Plaintiff's Vicodin prescription from four

14   times per day to twice per day, she fails to allege that this act caused her harm. (Doc. 41-1 at 7.) For

15   example, she does not allege that the twice-per-day regimen was ineffective in addressing her pain.

16   (*Id.*) Instead, she concludes that this reduction occurred despite the "probable adverse consequences."

17   (*Id.*) Exactly what constitutes those "probable adverse consequences," is not explained.

18       Because the proposed amended complaint would not withstand a motion to dismiss under Rule

19   12(b)(6), leave to amend should not be granted. *See Bonin*, 59 F.3d at 845; *SmithKline Beecham*

20   *Corp.,* 287 F. Supp. 2d at 581.

21            5.    Prejudice to the opposing party

22       Generally, the most critical factor in determining whether to grant leave to amend is prejudice

23   to the opposing party. *Eminence Capital*, 316 F.3d at 1052 ("Prejudice is the touchstone of the inquiry

24   under rule 15(a)") (internal quotes omitted). The burden of showing prejudice is on the party opposing

25   an amendment to the complaint. *DCD Programs*, 833 F.2d at 187; *Beeck v. Aquaslide 'N' Dive Corp.*,

26   562 F.2d 537, 540 (9th Cir. 1977). Prejudice must be substantial to justify denial of leave to amend.

27   *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Under Rule 15(a),

28   there is a presumption in favor of granting leave to amend where prejudice is not shown. *Eminence*

13

1    *Capital*, 316 F.3d at 1052.

2          Here, Defendants argue leave to amend will cause prejudice because the action "has been

3    progressing for more than a year," and the "amendment would . . . require a new and extremely

4    different discovery plan, change to discovery responses, and a revision of the consultant/expert plans

5    and amended Rule 26 disclosures." (Doc. 44 at 13.)  Though the Defendants do not identify what new

6    discovery they would require, it appears that the complexion of the case would be changed from one

7    that is directed toward custodial staff stemming from the strip search to one that adds the, apparently

8    unrelated concerns over the medical care.  Likewise, of course, neither Lundgren nor Doe Nurse 1 has

9    had an opportunity to report on what their discovery needs would be.

10         Clearly, though, if the amendment is allowed, it would be subject to dismissal.  Assuming, the

11   Court granted Plaintiff leave to amend one more time and plead a fourth version of her case, this

12   process would devour the time remaining for discovery and would likely preclude the newly added

13   Defendants from conducting any discovery.  Consequently, this factor weighs against granting leave to

14   amend.

15   **IV.    Conclusion and Order**

16         Plaintiff has failed to demonstrate good cause to modify the scheduling order.  Further, Plaintiff

17   fails to show the proposed amendment should be allowed under Rule 15 because the proposed factual

18   allegations set forth do not state a claim.  Accordingly, the Court exercises its discretion to deny

19   Plaintiffs' request to amend the Scheduling Order.  *See Swanson*, 87 at 343; Fed. R. Civ. P. 15(a)(2).

20         Based upon the foregoing, **IT IS HEREBY ORDERED**:  Plaintiff's motion for modification of

21   the Court's Scheduling Order for leave to file a second amended complaint is **DENIED.**

22

23   IT IS SO ORDERED.

24      Dated:   **May 22, 2015**                        **/s/ Jennifer L. Thurston**
                                              UNITED STATES MAGISTRATE JUDGE
25

26

27

28

                                              14