1

2

3

4

5

6

7            IN THE UNITED STATES DISTRICT COURT FOR THE

8                 EASTERN DISTRICT OF CALIFORNIA

9

10    CHRISTINE DONALDSON,                    1:14-cv-00257-AWI-JLT

11              Plaintiff,          **AMENDED ORDER DENYING
                                    MOTION FOR**
12        v.                        **RECONSIDERATION OF
                                    MAGISTRATE JUDGE'S RULING**
13    KERN COUNTY, OFFICER BRENDA    **ON PLAINTIFF'S MOTION TO**
      GRAVES, OFFICER PHILLIP ROMERO, **AMEND**
14    OFFICER MISTY ISAAC, OFFICER
      FRANCES PERKINS, and DOE 1-10,  (Doc. 51)
15    inclusive,

16              Defendants.

17    _____/

18

19        Plaintiff Christine Donaldson brought this action under 42 U.S.C. § 1983 for an alleged

20    illegal strip search, retaliation, and denial of medical care against Defendants Kern County,

21    Officer Brenda Graves, Officer Phillip Romero, Officer Misty Isaac, Officer Frances Perkins,

22    and Doe 1-10.  Doc. 21.  On April 22, 2015, Donaldson filed a Motion to Modify the Scheduling

23    Order for Leave to File a Second Amended Complaint.   Doc. 40.   The proposed Second

24    Amended Complaint adds defendants Kathe Lundgren and Doe Nurse 1 as well as allegations

25

26                                        1

specific to these two defendants.  Doc. 41-1.  On May 22, 2015, the Magistrate Judge issued an order denying leave to amend.  Doc. 48.  In the instant motion, Donaldson seeks reconsideration of the Magistrate Judge's May 22, 2015 order.  Doc. 51.  For the reasons that follow, the court will deny the motion for reconsideration and remand for further proceedings consistent with this order.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Donaldson originally filed her complaint to commence this action on February 26, 2014. Doc. 1.  The parties then stipulated, and the Magistrate Judge agreed, to permit Donaldson to file a First Amended Complaint.  Docs. 19, 20.  On August 22, 2014, Donaldson filed her First Amended Complaint ("FAC"), raising three causes of action: (1) illegal strip search in violation of the First, Fourth, Eighth and Fourteenth Amendments to the Constitution, pursuant to 42 U.S.C. § 1983, against Defendants Kern County, Officer Graves, Officer Romero, and Does 1-10; (2) retaliation for exercise of First Amendment rights, pursuant to 42 U.S.C. § 1983, against Defendants Kern County, Officer Graves, Officer Isaac, Officer Perkins, and Does 1-10; and (3) denial of medical care, pursuant to 42 U.S.C. § 1983, against Defendants Kern County, Officer Graves, Officer Isaac, Officer Perkins, and Does 1-10.  Doc. 21, 7-10.

The FAC alleges that Donaldson was incarcerated at Lerdo Female Minimum Facility on February 29, 2012, where she "was subjected to a strip search after returning from a class."  Doc. 21, 4:23-24.  The FAC alleges Officer Graves performed the search, despite Donaldson's protests, while "a male guard, Officer Romero, surreptitiously observed the search."  Id. 4:24-26. Plaintiff filed grievances against Romero and Graves for their conduct during the search, as well as "a grievance against Officer Graves for improperly manipulating [Donaldson's] housing assignment."  Id. at 4:28-5:3.  The FAC alleges that Officer Graves retaliated against Donaldson

for filing the grievances by verbally harassing her and subjecting her "to disparaging treatment." Id. at 5:4-7.

The FAC alleges that Donaldson "suffered a severe adverse reaction after inserting a contact lens into her right eye" in early March 2012. Id. at 5:8-9. The FAC alleges that Donaldson "repeatedly sought out medical attention" from the guards, including defendants Graves, Isaac and Perkins." Id. at 5:9-11. "[I]n retaliation for her complaint against Officer Graves and Romero, defendants Graves, Isaac and Perkins refused to provide necessary medical care." Id. at 5:12-14. The FAC alleges that the County is liable for the Defendants' actions because it failed to "provide adequate training and supervision to Sheriff's deputies with respect to constitutional limits on use of strip searches and the provision of medical care," and failed to "practice and enforce policies against retaliation against inmates for reporting misconduct and/or filing grievances about jail conditions." Id. at 6.

On August 29, 2014, the Court then held a scheduling conference with the parties. Doc. 23. The Court ordered the parties to make initial disclosures no later than September 11, 2014 and set the other case deadlines. Id. at 1. In particular, "[a]ny requested pleading amendments [were] ordered to be filed, either through a stipulation or motion to amend, no later than November 24, 2014." Id. at 9 (emphasis omitted).

On September 10 and 11, 2014, the parties exchanged their initial disclosures. Doc. 43, 2:18-20; Doc. 43-1, 2-7; Doc. 44, 16-27. Kathe Lundgren, a nurse practitioner at Kern County Correctional Medicine ("KCCM"), was the only medical care provider who attended Donaldson at relevant times that was disclosed. Id. On September 25, 2014, Donaldson served her first set of discovery requests on Kern County. Doc. 43, 2:23-24; Doc. 43-1, 9-22. Donaldson specifically requested documents related to training manuals, regulations, policies, and

procedures for providing prisoners with medical care and with respect to requests for medical

attention.   Doc. 43, 2:23-3:2; Doc. 43-1, 11:24-12:1.   On or about November 11, 2014, Kern

County served their responses to Donaldson's first request for production.   Doc. 43, 3:8-10; Doc.

43-1, 26-30; Doc. 44-1, 2:16-21.   The documents produced included Donaldson's medical

records from the relevant time period, but did not include any applicable nursing protocols.   Id.

The March 7, 2012 notation, at 10:05 p.m., in Donaldson's medical records states:

> "(S) 'I think there's something inside my (R) eye.  I'm trying to take it out.'
> (O): Noted redness on (R) eye due to irritation.  But with no S/S of infection.  Has
> no drainage nor swelling.  V/S: BP = 174/97, T = 98.6, P = 95 R=20.
> (P): Advised to clean eyes with soap & water, and not to touch her eyes with her
> bare hands.  Also given artificial tear qtts. with instructions for its use."

Doc. 43-1, 26.  The March 10, 2012 notation, at 4:20 a.m., states:

> "(S) Walk-in complaining of worsening eye irritation injection. 'I have so much
> pressure and pain in my eyes.  I can't open it.'  Crying in pain.
> (O) Swelling & drainage in both eyes noted.  Worse on the right.  VS BP 166/102
> P-112 R-18
> (T) 97.6. Very anxious, upset.
> (A) as above. Already seen on same 3/7/12
> (P) TO MDSC today c MP"

Id.  There is a second notation on March 10, 2012, at 2:30 p.m., in a new handwriting that

is difficult to read.   Id. at 27.   In her later deposition, Lundgren testified that this is her

handwriting.  Lundgren Depo., 50:23-51:1.  She further testified that this entry states:

> "Complaining, CO means complaining of eye infection, swelling around the eyes,
> pus drain, pus dropping or draining, she also hurts in her teeth, jaw and throat.
> She was crying.  Her eyelid was swollen.  She wouldn't open very much.
> Something, I can't quite make that other part out and her sclera was very, very
> red.  That's the white part of your eye.  And the conjunctivitis, the conjunctive,
> which is under part of your eye here, was very inflamed and red, her throat was
> pink and it was moist.  There was no edema or there was no throat infection.
> There was no edema, no erythema in the throat, her neck was supple, there were
> no nodes, no swollen glands.
> . . .
> The neck was supple which means she doesn't have a stiff neck and she could
> move it all around and there were no nodes, there were no swollen glands down in
> her neck, which is what we check for.  Her nose had mild congestion and her
> dental, dental, something, dental abscess.

. . .

And then her diagnosis or assessment was conjunctivitis and oral infection and she agreed – the plan was she agreed to postpone her pelvic exam again and the medicines were ordered and then she was going to, you know, come back next week.

Id. at 51:5-52:22.  Each entry in the medical records turned over on November 11, 2014 has the treating nurse's signature followed by a difficult to discern multi-digit number.  Doc. 43-1, 26-28.  Information on the identity of the medical personnel who attended Donaldson on March 7 through March 11 was otherwise not provided in the medical records.  Id.; Doc. 43, 3:14-16.  Lundgren did subsequently testify that she did not know who wrote the March 7, 2012 note, but she wrote the later March 10, 2012 note.  Lundgren Depo., 37:25-38:2, 50:24-51:1.

In the November 11, 2014 discovery, Defendants also served on Donaldson an investigative report with the pages subsequently Bates stamped KC66 and KC67.  Doc. 53, 2:8-14; Doc. 54, 2:13-16; Doc. 54-1, 14-18.  These pages state that:

"Lundgren said she wrote a referral for Donaldson to see an Ophthalmologist at a later time, but there was no immediate need to send Donaldson to Kern Medical Center.  Lundgren explained to Donaldson that she would be unable to see an eye specialist at that time because it was Saturday and there was none working.  Lundgren said Donaldson only had irritated eye and was responding well to eye irrigation.
Lundgren said she also told Donaldson that the emergency room doctor would not be able to provide treatment, beyond what she was receiving at the Lerdo Pre-Trial Infirmary.
I told Lundgren about Donaldson's allegations that she (Lundgren) determined she needed to go to Kern Medical Center, but a detentions deputy refused to allow her to go and receive treatment.  I asked Lundgren if this occurred and if she ever told Donaldson to call an attorney.  Lundgren said this did not happen and she did not tell Donaldson to call an attorney."

Doc. 54, 2:13-16; Doc. 54-1, 14-18

Around December 2014, after reviewing the Defendants' responses and documents, Donaldson retained an expert in prison nursing protocols.  Doc. 43, 3:21-23.  The expert informed Donaldson's attorney that jails/prisons must have written nursing protocols.  Id. at 3:23-25.  On January 16, 2015, the parties filed a Joint Mid-Discovery Conference Statement

5

requesting an extension of the non-expert discovery deadline from May 29, 2015 to September 2015.  Doc. 29.  On January 21, 2015, the Court vacated a mid-discovery status conference set for January 26, 2015 and denied the request to amend the scheduling order.  Doc. 30.

On January 30, 2015, Donaldson's attorney emailed counsel for Kern County, requesting defendants supplement their production with all applicable nursing protocols.  Id. at 4:1-3; Doc. 43-1, 32.  On February 2, 2015, counsel for Kern County responded, stating "it would benefit all of us if we subpoena all of Donaldson's records and all eye related policies and procedures from [Kern County] Correctional Medicine."  Doc. 43, 4:4-9; Doc. 43-1, 32.  On or about February 9, 2015, Donaldson issued two subpoenas to KCCM to obtain the records on the identity of the treating nurses and the applicable nursing protocols and to depose the person most knowledgeable about this.  Doc. 43, 4:10-21; Doc. 43-1, 34-46.

On February 19, 2015, the parties' stipulated, and the Magistrate Judge granted, to amend the case schedule to extend the deadlines related to non-expert and expert discovery, motions, the pretrial conference date, and the trial date.  Doc. 35.  The order provided that all non-expert discovery shall be completed no later than October 29, 2015, all expert discovery shall be completed no later than January 21, 2016, and any non-dispositive motion shall be filed no later than January 25, 2016.  Id.  Donaldson did not request that the Magistrate Judge extend the pleading amendment deadline nor did the stipulation describe any concern related to the deadline which, by this point had passed nearly three months before on November 24, 2014.  Doc. 31; Doc. 34.  In granting the request, the Magistrate Judge admonished, "[n]o further amendments to the case schedule will be entertained absent a showing of exceptional good cause which does not include Plaintiff becoming re-incarcerated."  Doc. 35, 2:7-8.

On or about February 27, 2015, KCCM responded to the records subpoena with medical records, but did not produce any nursing protocols or the identity of the nurses.  Doc. 43, 4:28-5:2.  On or about March 19, 2015, Donaldson's attorney met with counsel for Kern County regarding Defendants' failure to produce nursing protocols.  Id. at 5:3-5.  On March 24, 2015, Defendants produced a nursing protocol that "facilitate[s] and guide[s] the RN in the evaluation, diagnosis, and treatment of Foreign Body in Eye (non-penetrating)."  Doc. 43, 5:6-9; Doc. 43-1, 66-68.  The protocol defines the applicable condition as "dirt, metal particles, insects or other small objects . . . lodged on the cornea, sclera, or conjunctivae.  The foreign body may also be hidden on the mucosal side of the upper (more common) and lower eyelids."  Doc. 43-1, 66-68.  "These foreign bodies are usually superficial and on-penetrating, if not removed quickly, however, corneal abrasion, infection, or penetration of the eyeball may result."  Id.  The protocol outlines the intervention plan for such a condition as:

"a.  Lift the eyelid (if foreign body not visible) and inspect.
b.  Irrigate eyes with normal saline or plain water.
    > Removal of foreign body may be attempted with a saline moistened gauze or cotton swab.  Caution should be exercised to avoid penetration of eye tissue.
c.  Refer patient to the MD.  If MD not on-si[t]e refer to KMC [Kern Medical Center].
d.  Refer patient to the on-site MD if unable to remove foreign body.
e.  If the on-site MD is not available, send the patient to Kern Medical Center Emergency room for treatment."

Id.

On March 25, 2015, Donaldson deposed Lundgren as the knowledgeable witness on certain topics.  Doc. 43, 5:10-12.  Lundgren testified that she first became aware of and reviewed the standardized procedure in this protocol when she started working at KCCM.  Lundgren Depo., 10:12-21, 69:6-12.  Lundgren also testified that she, as a nurse practitioner, is equivalent to an MD within the meaning of the protocol, that the protocol applies to staff nurses ("RNs"),

and that to the best of her knowledge the person who wrote the notation on March 7, 2012 was a

RN.  Id. at 70:2-20.  Lundgren testified that, before she saw Donaldson on Saturday, March 10,

2012, she would have normally reviewed the prior medical records.  Id. at 36:14-21.  Then, after

she saw Donaldson on Saturday, she referred her to go to the ophthalmologist on Monday:

> "This is a weekend, so I did do that for a Monday because it wasn't – there
> wouldn't be on there at the hospital on the weekends, there's no way to get one.
> Yes, that's what I did do to follow it up but it wasn't in such a state at that time
> that we were able to irrigate it and needed the drops of what we had and so forth.
> I mean, it, there wasn't anything more that I thought that I needed to do."

Id. at 44:7-18.  Lundgren further explained that:

> "Well, because I didn't know exactly what kind of anti-inflammatory, we didn't
> have any anti-inflammatory, we didn't have any anti-inflammatory drops, which
> is also what's very nice to have which helps with the pain and also helps with
> healing, that I was going to write a referral for her to go to the ophthalmologist
> and then I would write it so that she could go on Monday, and because it was a
> weekend, I know the eye doctor isn't there."

Id. at 59:13-21.  Lundgren then responded "yes" when asked "one of the reasons you

were referring her on Monday instead of right away is your knowledge that there wasn't a

ophthalmologist on duty at KMC at the time?"  Id. at 61:5-9.  Lundgren elaborated that the

deputies had nothing to do with this decision:

> Q.  Did you have any input or did you hear any input from any detention deputy
> about whether or not Ms. Donaldson should go to KMC?
> A.  No.  The detention deputies have nothing to do with that.  But going to KMC
> was, remember, Geraldine was there and – Dr. Tawansy's nurse, both in his
> private work and in the hospital and works very closely with him at that time.
> And it was discussed about what would happen and that it would be a good idea
> for her to have an examination just to make sure she was okay.
> We do what would be typical treatment until then and what anybody would do
> and that we were going to schedule it for Monday and she was going to facilitate
> that she got in on Monday.  So I mean, that was what was discussed, not then but
> for Monday.
> Q.  And in the course of that discussion, did any of the detention deputies make
> any comments of any kind about whether or not Ms. Donaldson should go to the
> hospital?
> MR. THOMSON:  That you heard.
> THE WITNESS:  No.  I mean, they are not in the room.  At female minimum, we
> have to leave the door open but they are not in the room where the clinic is.

8

Id. at 76:20-77:20.

Lundgren reasoned Donaldson needed a referral to the ophthalmologist because:

> "Well, because the infection and then when she told me that she had the contacts in, I was concerned about a scratch or that she might have done something that she needed some more treatment, especially some anti-inflammatory drops which we don't have, so just to make sure, I suggested that she see the ophthalmologist."

Id. at 60:18-24.

Donaldson returned to KCCM the next day, on Sunday March 11, 2012, as a walk-in and was immediately sent to an ophthalmologist at KMC who was called in because of the severity of Donaldson's condition.  Doc. 43-1, 28; Doc. 41-1, 7:3-6.  Donaldson alleges that by then she had experienced permanent vision loss and other physical injuries.  Doc. 41-1, 7:3-6.

After visiting with the ophthalmologist at KMC where Donaldson received a prescription for four Vicodin per day, Donaldson returned to KCCM on March 12, 2012.  At her deposition, Lundgren testified to what her writing said on a March 12, 2012 notation in Donaldson's medical records, explaining that "[t]here was a change of Vicodin order from four times a day to twice a day . . . [b]ecause that's standard there, we don't do four times a day unless they're in the infirmary."  Lundgren Depo., 64:4-12.  Lundgren testified that this change was because of Lerdo policy:

> "Q: And your decision to change it from four times a day to two times a day was based on Lerdo policy?
> A:  Yes.  And if she didn't have to be housed in the infirmary and she's in the regular pod, it wouldn't be necessary."

Id. at 64:23-65:3.

On April 22, 2015, Donaldson filed a Motion to Modify the Scheduling Order and Order Granting Leave to Amend Complaint.  Doc. 40.  The proposed Second Amended Complaint ("SAC") sought to add an Eighth Amendment claim against Doe Nurse 1, the nurse who

purported to treat her on March 7, 2012, for allegedly failing to refer her to a physician in contravention of the nursing protocol.   Doc. 41-1, 6:8-18; Doc. 51, 7:15-17.   The SAC also sought to add a claim against Lundgren for allegedly refusing to send Donaldson to KMC on March 10, 2012.   Doc. 41-1, 6:19-7:2; Doc. 51, 7:23-25.   Finally, the SAC sought to add a claim against Kern County on the basis of previously undisclosed custom, policy and practice in Kern County that allegedly limits administration of the pain reliever, Vicodin, to two times a day, irrespective of physician orders to the contrary.   Doc. 41-1, 7:7-13; Doc. 51, 8:12-14.

In support of the Motion to Modify the Scheduling Order and Order Granting Leave to Amend the Complaint, Donaldson included a declaration in which she declared that "[o]n or about March 10, 2012, I was seen by Nurse Lundgren for my eye injury.   It is my recollection that Nurse Lundgren directed the deputies to take me to Kern Medical Center for immediate treatment of my eye infection, but was either prevented or ignored. . . . I did not know that Nurse Lundgren's decision to delay my transport to Kern Medical Center was due to the absence of an on-duty ophthalmologist."   Doc. 40-3, 2:16-21.   Donaldson also declared that "[t]he only nurse I recognized during my visits was Nurse Practitioner Kathy Lundgren, whom I knew before my incarceration in 2012."   Id. at 2:14-15.

On May 22, 2015, the Magistrate Judge issued an order denying leave to amend.   Doc. 48.   The Magistrate Judge found that because Donaldson failed to demonstrate diligence in discovery, she failed to show good cause for amendment of the scheduling order related to the pleading amendment deadline under Federal Rule of Civil Procedure 16(b).   Id. at 4:6-7:14. Alternatively, the Magistrate Judge also found that Donaldson failed to show amendment of the complaint was proper under Federal Rule of Civil Procedure 15.   Id. at 7:15-14:14.   Donaldson now seeks reconsideration of the Magistrate Judge's May 22, 2015 order.   Doc. 40.

On August 14, 2015, this Court issued an order for additional briefing seeking clarification on when the pages Bates stamped KC66 and KC67 were turned over to Donaldson and how these pages affect her motion for reconsideration considering her assertion in the motion that "there was no information prior to March 25, 2015 that Ms. Lundgren had herself denied, delayed or interfered with Ms. Lundgren's medical treatment as required by case law. Once Ms. Lundgren testified that it was she herself who refused to send Ms. Donaldson for an immediate consultation with an ophthalmologist, plaintiff promptly sought to include a claim against her shortly thereafter." Doc. 52, 2:15-23.   In response both parties agreed that the pages Bates stamped KC66 and KC67 were turned over in the November 11, 2014 discovery (but subsequently Bates stamped).   Doc. 53, 2:8-14; Doc. 54, 2:13-16; Doc. 54-1, 14-18.   In her supplemental briefings, Donaldson's argument for reconsideration rested primarily on the new evidence of the Foreign Body in Eye Protocol and Lundgren's deposition testimony acknowledging her awareness of this protocol – that without this evidence Donaldson lacked a basis to state an Eight Amendment claim against Lundgren.   Doc. 53.   Defendants filed an opposition. Doc. 54.

## II.   LEGAL STANDARD

"Whenever any motion has been granted or denied in whole or in part, and a subsequent motion for reconsideration is made upon the same or any alleged different set of facts, counsel shall present to the Judge or Magistrate Judge to whom such subsequent motion is made an affidavit or brief, as appropriate, setting forth the material facts and circumstances surrounding each motion for which reconsideration is sought, including [¶] (1) when and to what Judge or Magistrate Judge the prior motion was made; [¶] (2) what ruling, decision, or order was made thereon; [¶] (3) what new or different facts or circumstances are claimed to exist which did not

11

exist or were not shown upon such prior motion, or what other grounds exist for the motion; and

[¶] (4) why the facts or circumstances were not shown at the time of the prior motion."  Local

Rule 230(j).  Reconsideration of motions may also be granted under the standards applicable to

reconsideration of a final judgment under Federal Rule of Civil Procedure 59(e).  Under Rule

59(e), "[r]econsideration is appropriate if the district court (1) is presented with newly discovered

evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is

an intervening change in controlling law.   There may also be other, highly unusual,

circumstances warranting reconsideration."   School Dist. No. 1J, Multnomah County, Or. v.

ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993) (citations omitted).

## III.   ANALYSIS

Having reviewed the pleadings of record and all competent and admissible evidence

submitted, the Court finds Donaldson has failed to meet the foregoing standard for

reconsideration.   Donaldson argues that the Magistrate Judge erred in the Rule 16 analysis

because the Foreign Body in Eye Protocol and Lundgren's deposition provided new evidence

that Donaldson diligently acted upon.  See Doc. 51, 15:24-19:7.  The Court, however, finds that

Donaldson was on notice of the potential for claims against Lundgren and Doe Nurse 1 as early

as November 11, 2014.   In the investigative report turned over on that date, Lundgren clearly

refutes Donaldson's allegations that detention deputies had refused to allow her to go and receive

treatment.  Doc. 54-1, 15.  Lundgren also clearly states that she wrote a referral for Donaldson to

see an ophthalmologist at a later time, but there was no immediate need to send Donaldson to

Kern Medical Center and no ophthalmologist was working because it was Saturday.  Id. at 14.

This information was provided in discovery almost two weeks before the pleading amendment

deadline passed on November 24, 2014 and over three months before the Magistrate Judge

granted the parties' stipulation to amend the case schedule and, in the process, admonished "[n]o further amendments to the case schedule will be entertained absent a showing of exceptional good cause which does not include Plaintiff becoming re-incarcerated."   Doc. 35, 2:7-8. Donaldson clearly had notice on November 11, 2014 that it may not have been the detention deputies who delayed her treatment, but rather the nurses, yet she did not attempt to amend her pleadings to add claims against Lundgren and Doe Nurse I until April 22, 2015.  Accordingly, Donaldson failed to be diligent in pursuing these claims under Rule 16.

Likewise, the Foreign Body in Eye Protocol turned over on March 24, 2015 and Donaldson's deposition testimony on March 25, 2015 concerning her knowledge of this protocol do not provide a basis for a finding of diligence.  Evidence that a medical provider failed to abide by an established treatment protocol is evidence from which a jury could infer deliberate indifference.  See Mata v. Saiz, 427 F.3d 745, 757-58 (10th Cir. 2005) (reversing summary judgment where nurse's violation of published health-care requirements was circumstantial evidence that she knew of substantial risk of harm); see also Phillips v. Roane Cnty., Tenn., 534 F.3d 531, 542-43 (6th Cir. 2008) (affirming denial of qualified immunity for paramedic whose failure to follow established treatment protocols could constitute deliberate indifference). Medical protocols, however, are not determinative of what is a serious medical condition and do not by themselves establish the constitutionally minimum level of medical treatment under the Eighth Amendment.   See Hamilton v. Endell, 981 F.2d 1062 (9th Cir.1992) (holding that defendants may have acted with deliberate indifference by choosing to rely on a doctor's "inferior" medical opinion, which was based solely on standard medical protocol, instead of on plaintiff's treating physician and surgeon), overruled in part on other grounds as recognized in Snow v. McDaniel, 681 F.3d 978, 986 (9th Cir. 2012); Roe v. Elyea, 631 F.3d 843, 859-63 (7th

Cir. 2011) (medical protocol itself violated the Eighth Amendment); <u>Petties v. Carter</u>, 2015 WL 4567899, *3 (7th Cir. April 28, 2015) (doctor who failed to follow a medical protocol did not act with deliberate indifference).  Thus, the Foreign Body in Eye Protocol, while possibly evidence of deliberate indifference, does not by itself support claims against Doe Nurse I and Lundgren.  Indeed, Donaldson was already sufficiently on notice of the potential for these claims against Doe Nurse I and Lundgren from the November 11, 2014 discovery and failed to diligently pursue them.

Additionally, based upon Lundgren's deposition testimony, Lundgren did not violate the protocol.  In response to a leading question from Donaldson's own counsel, Lundgren testified that she, as a nurse practitioner, is the equivalent to an MD within the meaning of the protocol.  <u>See</u> Lundgren Depo., 70:2-20.  The protocol only requires a referral to KMC if an MD is not on site.  It does not require the on-site MD to refer to KMC.  It is further ambiguous if Doe Nurse I violated the protocol as it provides both "c. Refer patient to the MD.  If MD not on-si[t]e refer to KMC" and "d. Refer patient to the on-site MD if unable to remove foreign body."  This could be interpreted to mean that the protocol only requires a nurse to refer a patient to an MD if the nurse is unable to remove the foreign body.  Indeed, if this interpretation is not taken "d." becomes completely meaningless.  Further, on March 7, the foreign body in Donaldson's eye that ultimately caused the infection, i.e., the other inmate's contact lens, had in fact already been removed.  There is nothing to suggest that Doe Nurse I should have thought she was unable to remove the complained about foreign body with irrigation and artificial tears.  Regardless, the fact that additional evidence came to light that possibly supports Donaldson's claims against Doe Nurse I and Lundgren does not excuse her pre-existing lack of diligence.  Donaldson has failed

1

2    to show diligence and consequently good cause to modify the scheduling order under Rule 16(b)

3    on the basis of the protocol.

4           Donaldson also disputes her diligence for claims related to Lerdo's practice of limiting

5    Vicodin to twice per day.  In regards to this alleged practice, the Magistrate Judge found that

6    "Plaintiff fails to explain how discovery of the fact that Lundgren's decision to deny Plaintiff the

7    pain medication prescribed by the doctor was pursuant to a County policy, modifies in any way,

8    the *Monell* claim.  Rather, as Plaintiff's counsel admitted at the hearing, this is evidence that may

9    be used – regardless of whether the pleading amendment is permitted here – to prove that the

10    constitutional deprivation, if there was one, was caused by County's policy.  Thus, because

11    Plaintiff delayed unduly in seeking amend the pleadings, this factor weighs against granting

12    leave to amend."  Doc. 48, 9:9-14.  Donaldson now argues that the Magistrate Judge erred here

13    because "plaintiff seeks to add Lundgren as an individual defendant precisely because she was

14    the actor who implemented the County's unconstitutional policy.  While the Court was correct

15    that plaintiff may use this evidence to support her already-pleaded *Monell* claim, there is no basis

16    to conclude that Ms. Donaldson should be denied her right to proceed against Lundgren

17    individually."  Doc. 51, 16:19-24.  Plaintiff further states that "[b]ecause neither the Court nor

18    defendants have disputed that Ms. Donaldson was completely unaware prior to March 25, 2015

19    regarding Lerdo's admitted practice of ignoring physician orders to administer Vicodin more

20    than twice per day, there is no legal basis to conclude that plaintiff could have been more diligent

21    to plead this claim within the amendment period."  Id. at 9:11-15 (footnote omitted).  This

22    argument fails, however, because Donaldson is only now seeking to proceed against Lundgren

23    on an individual basis for this specific claim.  Nowhere in the proposed SAC does Donaldson

24    seek to pursue the claim on Lerdo's alleged Vicodin practice against Lundgren on an individual

25

26                              15

basis.  Indeed, the allegations for this alleged policy or practice are entirely against Kern County.  See Doc. 41-1, 7:7-13.  Donaldson has failed to be diligent in bringing this claim against Lundgren on an individual basis.  Consequently, Rule 16(b) does not provide a basis for granting reconsideration of the Magistrate Judge's ruling.

Donaldson also disputes the Magistrate Judge's Rule 15 analysis.  See Doc. 51, 19:8-25:19.  Specifically, Donaldson challenges the findings of prejudice, undue delay, and futility.  Id.  In addition to the reasons above, the Court, however, finds the Magistrate Judge's conclusions and findings here to be supported by proper analysis.

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for reconsideration of the Magistrate Judge's May 22, 2015 order is DENIED; and

2.  The matter is referred back to the Magistrate Judge for further proceedings.

IT IS SO ORDERED.

Dated:   September 10, 2015             _____

SENIOR  DISTRICT  JUDGE